## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **MARVIN SCOTT II and LASANDRA SCOTT** | : | |
| **as the personal representative of the estate of** | : | |
| **MARVIN SCOTT III** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil Action No. _____** |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **COLLIN COUNTY TEXAS, and SOUTHWEST** | : | |
| **CORRECTIONAL MEDICAL GROUP INC., and** | : | |
| **WELLPATH LLC, and DETENTION OFFICER** | : | |
| **ALEC DIFFATA, and   DETENTION** | : | |
| **SERGEANT JUSTIN PATRICK,** | : | |
| **and DETENTION SERGEANT AUSTIN** | : | |
| **WONG, and DETENTION OFFICER** | : | |
| **ANDREAS CARDENAS, and DETENTION** | : | |
| **LIEUTENANT CHRISTOPHER WINDSOR, and** | : | |
| **DETENTION OFFICER JAMES SCHOELEN,** | : | |
| **and DETENTION CAPTAIN BLAISE** | : | |
| **MIKULEWICSZ** | : | |
| **Defendants.** | : | |

## CIVIL ACTION COMPLAINT

**NOW COMES** Marvin Scott II and Lasandra Scott, by and through her chosen counsel

John J. Coyle, Esquire of McEldrew Purtell, complaining of Defendants, and in support thereof

states the following:

## NATURE OF THE ACTION

1.      On March 14, 2021, Marvin Scott III was arrested by Allen Police Department Officers

for possession of a small amount of marijuana.  Because the officers considered Mr. Scott's

behavior to be erratic and unusual, he was taken to Allen Presbyterian Hospital for evaluation.

The physician who evaluated Mr. Scott found that he was suffering from bipolar disorder and

schizophrenia but reported that he did not see a contraindication to Mr. Scott being incarcerated.

Mr. Scott was then taken to the Allen Police Department jail, and subsequently, the Collin County Jail. Mr. Scott continued to act in an unusual manner in Collin County jail. The Detention staff did not screen for or treat his mental health, instead, they attacked him, pepper sprayed, suffocated, and killed Mr. Scott.

## PARTIES

2.      Plaintiff, Marvin Scott II, is an adult individual, the father of Marvin Scott III, his personal representative, and a resident of Texas.

3.      Plaintiff, Lasandra Scott, is an adult individual, the mother of Marvin Scott III, and a resident of Texas.

4.      Defendant Collin County is a political subdivision duly organized and existing under the laws of the state of Texas. Defendant Collin County is responsible for the funding, budget, policies, procedures operation, staffing, training, and oversight of Collin County Jail.

5.      Defendant Southwest Correctional Medical Group, Inc., is a is a third-party medical company providing medical services for the Collin County Jail. Southwest Correctional Medical Group, Inc. may be served at its corporate headquarters located at 1283 Murfreesboro Pike, Nashville, TN 37217.

6.      Defendant Wellpath, LLC, f/k/a Southwest Correctional Medical Group, Inc., is a third party medical provider corporation with its headquarters and principal place of business located in Tennessee. Wellpath may be served with process at their corporate headquarters at 3340 Perimeter Hill Drive Nashville, TN 37211 or through their registered agent Corporate Creations Network, Inc., 2425 W. Loop South #200, Houston, TX 77027.

7.      Defendant, Detention Officer Alec Diffata,("Diffata") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

8.      Defendant, Detention Sergeant Justin Patrick, ("Patrick") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

9.      Defendant, Detention Sergeant Austin Wong, ("Wong") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

10.     Defendant, Detention Officer Andreas Cardenas, ("Cardenas") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

11.     Defendant Detention Lieutenant Christopher Windsor ("Windsor") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

12.     Defendant, Detention Officer James Schoelen, ("Schoelen") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

13.     Defendant Detention Captain Blaise Mikulewicsz ("Mikulewicsz") was at all times relevant herein acting under color of state law in the course and scope of his duties as detention officer in the Collin County jail.

## JURISDICTION AND VENUE

14.     Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 AND 1343 as this action is brought pursuant to 42 U.S.C. §§ 1983 to redress a deprivation of the Fourteenth Amendment rights of the decedent Marvin Scott III.  Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §§ 1367 to adjudicate pendent state law claims.

15.     Venue is proper in this Honorable Court as Defendants' constitutional violations, intentional torts, and otherwise violative conduct occurred within the Eastern District of Texas.

## FACTS RELATED TO THE KILLING OF MARVIN SCOTT III

16.     On March 14, 2021, Marvin Scott III  was arrested by Allen Police Department Officers for possession of a small amount of marijuana.

17.     Because the officers considered Mr. Scott's behavior to be erratic and unusual, he was taken to Texas Allen Presbyterian Hospital for evaluation. Mr. Scott arrived in the Texas Health Allen Emergency Department at 1:34 p.m.

18.     The physician who evaluated Mr. Scott identified a history bipolar 2 disorder schizophrenia, and benign hypertension.  He was not found to have any acute medical conditions other than his mental status.

19.     Mr. Scott was agitated and upset when he was admitted but over the course of approximately three hours of observation, and treatment, the medical staff was able to be calmed down and his mental health crisis subsided.

20.     Mr. Scott was discharged from Texas Allen Presbyterian Hospital at 4:54 p.m. back into Allen Police Department custody.

21.     Mr. Scott was then taken to the Allen Police Department jail where Allen Police Department personnel attempted to process him.

22.     Mr. Scott again exhibited behavior that indicated he was having a mental health crisis. He was agitated, unable to follow directions, and erratically laughing.

23.     Despite this evidence of a mental health episode, and the Allen Police Department's knowledge that Mr. Scott was a diagnosed schizophrenic, he was not seen by any mental healthcare provider and not taken back to the hospital.

24.     Instead, Mr. Scott was threatened with tasers, physically taken to the ground, and strapped into a restraint chair.

25.     Despite Mr. Scott's mental health episode was subsequently taken from the Allen Police Department to the Collin County Jail, not to seek additional mental health evaluation.

26.     Mr. Scott arrived at Collin County jail at approximately 6:00 p.m. He continued to exhibit signs of mental health crisis for approximately 5 hours but he was never seen by mental health care providers and was never transported to the hospital for mental health treatment.

27.     Upon arriving at the Collin County Jail, Mr. Scott's behavior was erratic, up and down, strange, and disjointed. It was plain and obvious that he was experiencing a mental health crisis.

28.     Upon arriving at the Collin County Jail, Mr. Scott's information was already within their internal "Odyssey" system. Accordingly, Collin County Jail personnel was aware that Mr. Scott was a diagnosed schizophrenic.

29.     Based upon Mr. Scott's history and intake process, he was categorized as a "Category 3", which is the highest level of observation required.

30.     Mr. Scott demonstrated erratic behavior throughout the intake process.

31.     Following the intake process, which involved no mental health screening, Mr. Scott was placed into the "detox" cell.

32.     While within the detox cell, Mr. Scott continued to act erratically and climbed on top of a dividing wall within the cell.

33.     Detention Officer Renee Hernandez, who was assigned to the intake area of the jail observed Mr. Scott's conduct within the detox cell and asked Patrick to move him from "open waiting" to the transfer area of the jail because she recognized that his behavior was going to cause a "big ordeal".

34.     Patrick refused Officer Hernandez's request and refused to seek mental health intervention.

35.     Mr. Scott's erratic conduct continued for hours including removing his clothes, climbing on the dividing wall multiple times, incoherently yelling, stomping, sweating, and speaking incoherently.

36.     Patrick contacted the supervising Lieutenant, Windsor and informed him of Mr. Scott's pattern of erratic conduct.

37.     Windsor arrived at Mr. Scott's cell and personally observed his erratic behavior and decided to remove him from the cell. There is no indication that Windsor intended to have Mr. Scott evaluated or provide him with mental health treatment. Rather, Windsor devised to strap Mr. Scott to a bed to suppress his erratic behavior.

38.     Windsor called on Difatta to remove Mr. Scott from his cell.

39.     Difatta, along with Patrick, Wong, and Cardenas dragged Scott from his cell and took him to the floor.

40.     Difatta, Patrick, Wong, Cardenas, and Windsor dragged Scott into a separate cell with a restraint board.

41.    Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor as they smothered kneeled on, pepper prayed, choked, suffocated and covered the face of Mr. Scott.

42.    Mikulewicsz supervised and failed to intervene as Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor smothered kneeled on, pepper prayed, choked, suffocated and covered the face of Mr. Scott.

43.    Mr. Scott repeatedly had pepper spray shot directly into his mouth and airway.

44.    The actions of Mikulewicsz, Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor served no legitimate governmental purpose other than to punish Mr. Scott.

45.    The force used upon Mr. Scott was unreasonable, excessive, and unconstitutional.

46.    The actions of Mikulewicsz, Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor caused Mr. Scott pain, agony, and untimely death.

47.    Mikulewicsz, Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor all had the opportunity to intervene and stop the unreasonable and punitive use of lethal force but failed to do so.

48.    An autopsy of Mr. Scott revealed the cause of death involved possible/ probable asphyxia.

49.    An autopsy of Mr. Scott determined that his manner of death was homicide.

50.    Mikulewicsz, Shoelen joined Difatta, Patrick, Wong, Cardenas, and Windsor failed to take any efforts to provide Mr. Scott any mental health analysis or intervention prior their use of excessive lethal force.

51.    Collin County has a constitutional duty to provide adequate medical and mental healthcare to inmates which cannot be delegated.

52.     Collin County began contracting with Southwest Correctional Medical Group (SWCMG), a private corporation, to provide medical and mental health care services in 2015. A copy of Collin County's Request for Proposals related to providing medical and mental health care services and SWCMG's accepted response to proposal was provided to plaintiff by counsel for Collin County.

53.     SWCMG was subsequently subsumed by Wellpath, another third-party medical and mental health care service provider.

54.     SWCMG and Wellpath will hereinafter be referred to collectively as "Medical Providers"

55.     Collin County chose to contract with Medical Providers to provide medical services at the Collin County jail because of Medical Providers' promise in its Proposal for the contract to reduce costs through the Cost Containment Program.

56.     Medical Providers described its cost containment which was adopted by Collin County and required nurses in the jail to refuse, deny, and avoid transferring inmates to offsite medical providers for the purpose of reducing costs.

57.     Medical Providers operated with a "pure profit motive" wherein if they provide no medical or mental health care to inmates, their profits increased dure to their "per diem" payment structure.

58.     Medical Providers' pure profit motive created an incentive to withhold medical and mental health treatment of individuals incarcerated on minor charges because they would be released soon and it would become someone else's responsibility.

59.     Medical Providers' cost containment program, and pure profit motive, caused Collin County to admit inmates without competent mental health evaluation or access to mental health treatment.

60.     Medical Providers' cost containment program, and pure profit motive, caused Collin County to deny inmates access to adequate mental health care outside of the facility.

61.     Medical Providers' cost containment program, and pure profit motive, created a policy using physical force and restraint as a substitute for adequate mental health care.

62.     Medical Providers' cost containment program, and pure profit motive, is an explicit documented policy memorialized in Medical Providers' response to Collin County's Request for Proposal related to providing mental health care within Collin County jail.

## WRONGFUL DEATH ACTION

63.     Plaintiffs Marvin Scott II and Lasandra Scott , hereby bring these claims pursuant to the Texas Wrongful Death Statute, Tex. Code Ann. § 71.004, on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Marvin Scott III.

64.     No other action has been brought to recover for Marvin Scott III's death under the aforementioned statute.

65.     Plaintiffs claim all available damages under the Texas Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions that the Plaintiff's decedent, Marvin Scott III would have rendered to the wrongful death beneficiaries but for his traumatic, untimely, and unnatural death occurring as a result of the excessive force, failure to intervene, and deliberate indifference to a serious medical need which are the subjects to the present litigation.

66.     Plaintiff claims all damages for medical bills and/or expenses.

67.     Plaintiff claims damages for payment of funeral and burial expenses.

## SURVIVAL ACTION

68.     Plaintiffs also bring claims as a survival action under the Tex. Code Ann. § 71.021, for all damages recoverable under the Statute, including but not limited to, loss of income, both past and future income potential, as well as pain and suffering prior to death, and for the emotional

distress suffered by Plaintiff's decedent, Marvin Scott III, from the initiation of the excessive force against him to his death.

### COUNT I: FOURTEENTH AMENDMENT VIOLATION
### EXCESSIVE FORCE ON A PRETRIAL DETAINEE

*Plaintiffs v. Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Detention Lieutenant Christopher Windsor Defendant, Detention Officer James Schoelen,*

69.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

70.     Defendants, Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Defendant Detention Lieutenant Christopher Windsor Defendant, Detention Officer James Schoelen, Detention Captain Blaise Mikulewicsz used unconstitutionally excessive force against Marvin Scott III including striking, smothering, choking and pepper spraying all contributing to his untimely and unnatural death.

71.     The actions of Defendants were intentional, objectively unreasonable, and were not rationally related to any legitimate non-punitive governmental purpose.

72.     As a result of the actions of Defendants, Marvin Scott III suffered mental anguish, extreme pain, agony, and ultimately death.

**WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: FOURTEENTH AMENDMENT VIOLATION
## FAILURE TO INTERVENE AND BYSTANDER LIABILITY

*Plaintiffs v. Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Detention Lieutenant Christopher Windsor Defendant, Detention Officer James Schoelen, Detention Captain Blaise Mikulewicsz*

73.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

74.     Defendants, Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Defendant Detention Lieutenant Christopher Windsor, Detention Officer James Schoelen, Detention Captain Blaise Mikulewicsz watched as their fellow Detention Officers used excessive force including striking, smothering, choking and pepper spraying Marvin Scott III, and failed to obtain necessary and timely medical care, all contributing to his untimely and unnatural death.

75.     Defendants had a reasonable opportunity and were in a position to realistically intercede to prevent the unconstitutional and ultimately deadly use of force on Marvin Scott III,  but did not and allowed it to occur.

76.     The actions of Defendants were intentional, objectively unreasonable, and were not rationally related to any legitimate non-punitive governmental purpose.

77.     As a result of the actions of Defendants, Marvin Scott III suffered mental anguish, extreme pain, agony, and ultimately death.

       **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

**COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT
DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED**

*Plaintiff v. Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention Sergeant
Austin Wong, Detention Officer Andreas Cardenas, Detention Lieutenant Christopher Windsor
Defendant, Detention Officer James Schoelen, Detention Captain Blaise Mikulewicsz*

78.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

79.     Defendants, Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention

Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Defendant Detention

Lieutenant Christopher Windsor, Detention Officer James Schoelen, Detention Captain Blaise

Mikulewicsz knew that Marvin Scott III was in the midst of a mental health crisis but took no steps

to get medical or psychiatric intervention.

80.     Defendants, Detention Officer Alec Diffata, Detention Sergeant Justin Patrick, Detention

Sergeant Austin Wong, Defendant, Detention Officer Andreas Cardenas, Defendant Detention

Lieutenant Christopher Windsor, Detention Officer James Schoelen, Detention Captain Blaise

Mikulewicsz did not take any steps to provide Marvin Scott III with medical treatment, transfer

him to jail medical staff, or document his obvious and immediate medical needs in any way.

81.     As a result of the actions and/or omissions Detention Officer Alec Diffata, Detention

Sergeant Justin Patrick, Detention Sergeant Austin Wong, Defendant, Detention Officer Andreas

Cardenas, Defendant Detention Lieutenant Christopher Windsor, Detention Officer James

Schoelen, Detention Captain Blaise Mikulewicsz, Marvin Scott III suffered mental anguish,

extreme pain and agony, and ultimately died.

        **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants

pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00),

including interest, delay damages, costs of suit, general and specific damages, including both

survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT IV: MONELL LIABILITY
*Plaintiffs v. Collin County Texas, SWCMG, Wellpath*

82.   Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

83.   Defendants, Collin County, and SWCMG Wellpath' explicit and documented policy of "cost containment" created constitutional deficiencies in the following areas:

   a.   Adequate mental health care screening;

   b.   Adequate access to mental health treatment;

   c.   Adequate access to mental health treatment outside the facility:

   d.   Denial of necessary mental healthcare based solely on financial profit.

84.   Defendants' policies which prioritize a pure profit motive over mental health treatment denies inmates the right to access to mental health screening and treatment.

85.   Defendants' policy to deny inmates mental health screening and treatment when such treatment would be less profitable than allowing an inmate to go without treatment until release was a moving cause behind the pain, agony, and untimely death suffered by Marvin Scott III.

   **WHEREFORE**, Plaintiff demands judgement in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

Respectfully submitted,


/s/ *John J. Coyle*
John J. Coyle, Esq.
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
(215) 545-8805 (fax)
jcoyle@mceldrewyoung.com

/s/ *Mark V. Maguire*
Mark V. Maguire, Esq.
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
(215) 545-8805 (fax)
mmaguire@mceldrewyoung.com
pro hac vice motion forthcoming